



# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NARCISA GARCIA, SAU LIN SUM SO,
CENTER FOR ADVOCACY FOR THE RIGHTS
AND INTERESTS OF THE ELDERLY, AND THE
ARC OF PENNSYLVANIA,
on behalf of themselves and all others similarly situated,

    Plaintiffs,

    vs.

CHARLES E. JOHNSON, Acting Secretary of the United
States Department of Health and Human Services,

MICHAEL J. ASTRUE, Commissioner of the Social
Security Administration,

ESTELLE B. RICHMAN, Secretary of the Pennsylvania
Department of Public Welfare,

    and

DENISE CHAMBERS, Executive Director of the
Philadelphia County Board of Assistance

    Defendants.

CIVIL ACTION

No. 2009- *1747*

COMPLAINT

CLASS ACTION

**FILED**

APR 2 4 2009

MICHAEL E. KUNZ, Clerk
By_____ JY____Dep. Clerk

## COMPLAINT
### PRELIMINARY STATEMENT

1. This action challenges the failure of the defendants, officials of the federal Department of Health and Human Services (HHS), the federal Social Security Administration (SSA), and Pennsylvania Department of Public Welfare (DPW) to provide timely payment of Medicare premiums for thousands of low-income elderly individuals and individuals with disabilities, and to provide adequate and accurate notices to eligible persons concerning the denial or delay of these benefits. As a result of



defendants' failure to provide the financial assistance to which these individuals are indisputably entitled, low-income elderly and disabled Pennsylvanians have been forced either to pay the monthly Medicare premiums themselves out of their limited incomes or to go without Medicare benefits, for months and even years.

2.   The Social Security Act provides that certain low-income individuals who are elderly or disabled, and who are eligible for Medicare benefits, are entitled to have their Medicare premiums paid by the Medicaid program. The portion of the Medicaid program under which such premium payments are generally made is called the Medicare Savings Program (MSP).  Medicaid is a cooperative federal-state program administered by the states, and, in the federal context, administered by the Centers for Medicare & Medicaid Services (CMS) within the Department of Health and Human Services (HHS).  In Pennsylvania, Medicaid is administered by the Department of Public Welfare (DPW). Medicare is a fully federal program, administered by CMS within HHS, in cooperation with the Social Security Administration (SSA).  Payment of the Medicare premiums for individuals entitled to MSP benefits requires timely interaction between the state (DPW) and federal (HHS and SSA) agencies.

3.   This class action seeks declaratory, injunctive and notice relief on behalf of persons with disabilities and elderly individuals living in Pennsylvania who have been denied Medicare Savings Program benefits by the federal Department of Health and Human Services (HHS), the Social Security Administration (SSA), and the Pennsylvania Department of Public Welfare (DPW) in violation of the Social Security Act, federal regulations, and the Due Process Clause of the United States Constitution.

<u>JURISDICTION</u>

2

4.  Jurisdiction is conferred on this Court by 28 U.S.C. § 1331, by 28 U.S.C. § 1343(a)(3) and (4), which provide for jurisdiction over actions under the Constitution and civil rights laws, by 42 U.S.C. § 405(g), which is incorporated by 42 U.S.C. § 1395ff(b)(1)(A), and by 28 U.S.C. § 1361.

5.  Plaintiffs' claims for declaratory and injunctive relief and for notice and other appropriate relief are authorized by 28 U.S.C. §§ 2201 and 2202, Rule 57 of the Federal Rules of Civil Procedure, and by 42 U.S.C. § 1983 and 5 U.S.C. §§ 701-706.

6.  Plaintiffs' claims for attorneys' fees and costs are authorized by 42 U.S.C. § 1988 and 28 U.S.C. § 2412.

<u>PARTIES</u>

7.  Plaintiff Narcisa Garcia is a citizen of the United States of America and a resident of Philadelphia County, Pennsylvania.

8.  Narcisa Garcia is a 66-year-old recipient of Medicaid and Medicare benefits, who is being improperly denied the benefits of the Medicare Savings Program.

9.  Plaintiff Sau Lin Sum So is a citizen of the United States of America and a resident of Philadelphia County, Pennsylvania.

10.  Sau Lin Sum So is a 69-year-old recipient of Medicare, who has attempted to enroll in the Medicare Savings Program, but is being improperly denied the benefits of the Medicare Savings Program.

11.  Plaintiff Center for Advocacy for the Rights and Interests of the Elderly (CARIE) is a non-profit organization whose principal place of business is 100 S. Broad Street, 1500 Land Title Building, Philadelphia, PA 19110-1088.  CARIE's mission is to enhance the well-being, rights and autonomy of older people in Pennsylvania.

12. CARIE was founded in 1977 primarily as an advocacy organization for the frail elderly. CARIE serves individuals aged 60 and older from throughout Pennsylvania, through the CARIE LINE and CARIE OnLINE, which are free telephone and online consultation services providing information and resolving problems for older adults and those who care for them. CARIE serves over 3,500 individuals each year through the CARIE LINE and CARIE OnLINE, many of whom have Medicare and Medicaid problems, including difficulty accessing Medicare Savings Program benefits. CARIE also provides advocacy services directly to individuals in nursing homes and personal care homes in Philadelphia.

13. CARIE provides individual counseling and assistance, as well as community education, to help older individuals and their caregivers to understand and access supportive programs and services. It also engages in extensive policy advocacy to improve the quality and accessibility of programs and services for the elderly. Seniors participate as staff and volunteers in many of CARIE's activities. Many of CARIE's individual financial contributors and a majority of its Board of Directors are seniors and their caregivers.

14. Many of those served by CARIE are eligible for the Medicare Savings Program. CARIE has been forced to expend time, money, and other resources to assist individuals who are attempting to enroll in the Medicare Savings Program and to advocate for the proper and efficient administration of the Medicare Savings Program so that elderly individuals throughout Pennsylvania are able to access its benefits.

15. CARIE's ability to assist vulnerable elderly individuals in obtaining their Medicare Savings Program benefits and to advocate effectively on behalf of older

4

individuals who are entitled to the benefits of the Medicare Savings Program has been impaired by defendants' improper administration of this program and failure to provide notice to eligible persons concerning denial and delay of these benefits. CARIE and the individuals it serves have been and will be harmed by defendants' practices that are challenged herein.

16.  The Arc of Pennsylvania is a non-profit organization whose principal place of business is 101 South 2nd Street, Suite 8, Harrisburg, PA 17101. The Arc of Pennsylvania was founded in 1949, and is an advocacy organization for individuals with intellectual and developmental disabilities, and their families. The Arc of Pennsylvania is affiliated with the Arc of the United States. The Arc of Pennsylvania and its local chapters provide individual advocacy and systemic advocacy on behalf of individuals with intellectual and developmental disabilities, and their families.

17.  The Arc of Pennsylvania currently has 8,713 individual members and 35 member chapters. Those 35 local chapters serve 47 counties across Pennsylvania. The Arc provides family training to inform parents and self-advocates about their rights, and engages in activities to increase public awareness about intellectual and developmental disabilities. The Arc provides training and public policy advocacy to ensure that individuals with intellectual and developmental disabilities are included in every community, and have access to benefits and services to which they are entitled and which they need.  Advocates from the Arc assist individuals and families in obtaining public benefits for which they are eligible.

18.  The Arc of Pennsylvania through its chapters has been forced to expend time, money and other resources to assist individual members who are attempting to enroll in

5

Medicare Savings Program benefits through the Medicaid program, and to advocate for the proper and efficient administration of the Medicare Savings Program so that individuals with disabilities throughout Pennsylvania are not improperly and illegally denied its benefits.

19. The Arc of Pennsylvania's ability to assist its members in obtaining their benefits and to advocate effectively on behalf of individuals with disabilities who are entitled to the benefits of the Medicare Savings Program through the Medicaid program has been impaired by defendants' improper administration of this program and defendants' failure to provide notice to eligible persons concerning their denial and delay of these benefits. The Arc of Pennsylvania and many of its members have been and will be harmed by defendants' practices that are challenged herein.

20. Defendant Charles E. Johnson is the Acting Secretary of the United States Department of Health and Human Services. He is responsible for the Centers for Medicare & Medicaid Services (CMS), which administers the Medicare and Medicaid programs. His responsibilities include ensuring that the Medicaid program, including the Medicare Savings Program, is properly and efficiently administered, that benefits are issued with reasonable promptness, in compliance with the Social Security Act, the Department's regulations and the United States Constitution, and that states that participate in the Medicaid program comply with the Social Security Act, the federal regulations and the United States Constitution. He is sued in his official capacity.

21. Defendant Michael J. Astrue is the Commissioner of the Social Security Administration. He is responsible for issuing Social Security benefits, for withholding of Medicare premiums from Social Security benefits, for ensuring that individuals who

6

receive Social Security benefits and who are enrolled in the Medicare Savings Program do not improperly have Medicare premiums deducted from their Social Security benefits, and for determining Medicare eligibility, in compliance with the Social Security Act, federal regulations and the United States Constitution.  He is sued in his official capacity.

22.  Defendant Estelle B. Richman is the Secretary of the Pennsylvania Department of Public Welfare.  She is responsible for ensuring that DPW's Medicaid program, including the Medicare Savings Program, is properly and efficiently administered, that benefits are issued with reasonable promptness, and that the Pennsylvania Medicaid program complies with the Social Security Act, the federal regulations and the United States Constitution.  She is sued in her official capacity.

23.  Defendant Denise Chambers is the Executive Director of the Philadelphia County Board of Assistance.  She is responsible for ensuring that the Philadelphia County Board of Assistance properly and efficiently administers the Medicaid program, including the Medicare Savings Program, and that benefits are issued with reasonable promptness, in compliance with the Social Security Act, the federal regulations and the United States Constitution.  She is sued in her official capacity.

<u>CLASS ACTION ALLEGATIONS</u>

24.  Plaintiffs Narcisa Garcia, Sau Lin Sum So, CARIE, and the Arc of Pennsylvania,  bring this action on behalf of themselves and all others similarly situated, pursuant to Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure.

25.  The plaintiff class consists of all persons living in Pennsylvania who are, were or will be eligible for Medicare benefits, and who are, were or will be simultaneously also eligible to have their Medicare premiums paid for by the

Pennsylvania Medicaid program's Medicare Savings Program, but whose Medicare Savings Program benefits were, are, or will be denied or delayed as a result of defendants' failure to properly and efficiently administer the Medicare Savings Program part of the Medicaid program.

26.  The requirements of Rules 23(a) and (b)(2) are met in that:

a. The class is so numerous that joinder of all members is impracticable. The ages and/or disabilities and low-incomes of class members also make joinder impracticable.  The composition of the class changes on a daily basis due to individuals becoming newly eligible for Medicare and for the Medicare Savings Program;

b. There are questions of law and fact common to the class, including whether defendants' practices violate the Social Security Act, the federal regulations and the United States Constitution.  Defendants' failure to provide timely Medicare Savings Program benefits harms all class members;

c. The claims of the representative parties are typical of the claims of the class members and the representative parties will fairly and adequately protect the interests of the class.  Moreover, plaintiffs are represented by competent counsel who have represented classes in numerous other cases involving Medicare, Medicaid, Social Security and other public benefits programs; and

d. The defendants have acted on grounds generally applicable to the members of the class, thereby making appropriate final injunctive and declaratory relief with respect to the class as a whole.

## LEGAL FRAMEWORK

8

27.  The Medicaid program is a joint federal-state assistance program authorized by Title XIX of the Social Security Act and administered by the states under the supervision of HHS.  42 U.S.C. § 1396a et seq.  The Medicaid program provides medical coverage to certain groups of low-income individuals who cannot afford the cost of medical care.  One of the benefits provided by the Medicaid program is payment of the cost of Medicare Part A and Part B premiums for certain groups of low-income individuals.  Pennsylvania participates in the Medicaid program.

28.  In establishing the Medicaid program, Congress determined that some benefits would be available as state options, and other benefits would be mandatory.  Any state that chooses to participate in the Medicaid program must provide the mandatory benefits.  One of the mandatory benefits is the payment of Medicare premiums under the Medicare Savings Program.  42 U.S.C. §§ 1396a(a)(10); 1396d(p)(3).  For some MSP recipients, benefits are available up to three calendar months prior to the month of application, if the individual was eligible during those months.  42 U.S.C. § 1396d(a).

29.  Medicare is a federally funded health insurance program established by Title XVIII of the Social Security Act.  Medicare is available to certain persons who are age 65 and older, or who are disabled, without regard to income or resources.  42 U.S.C. §1395c et seq.

30.  The Medicare program and the Medicaid program in its national context are both administered by the Centers for Medicare & Medicaid Services (CMS) within HHS.

31.  Medicare consists of several components:  Part A, which covers hospitalization, skilled nursing facility care and home health care; Part B, which covers physician visits and other outpatient care; Part C, which provides for an alternative

delivery of Part A and Part B benefits through private insurance plans; and Part D, which provides for the coverage of prescription drugs.  This action involves Medicare Part A and Part B.

32.  Medicare Part A covers hospitalization, skilled nursing facility care and home health care.  Most Medicare beneficiaries do not pay a premium for Part A coverage. Part A coverage is provided premium-free to individuals if they or a spouse have 40 or more quarters of Medicare-covered employment.

33.  Individuals who are not entitled to free Medicare Part A can purchase Part A coverage if they are 65 years of age or older, and are U.S. citizens or legal permanent residents who have lived continuously in the United States for at least five years.  42 U.S.C. § 426a(a).  An individual must be enrolled in Medicare Part B, or be eligible for Part B and file an enrollment request for Part B, to be eligible to purchase Medicare Part A.  42 U.S.C. § 1395i-2(a); SSA Program Operations Manual System (POMS) HI 00801.131, http:/policy.ssa.gov/poms.nsf/links/0600801131.

34.  Individuals who are not entitled to premium-free Medicare Part A may obtain Part A coverage by paying a monthly premium; in 2009 the Part A premium is $244.00 per month for people having 30-39 quarters of Medicare-covered employment, and $443.00 per month for people who have less than 30 quarters of Medicare-covered employment.

35.  Medicare Part B covers physician visits and other outpatient care.  There is a monthly premium for Medicare Part B coverage for all individuals who elect to participate in Part B.  The Medicare Part B premium is $96.40 per month in 2009.

36. Individuals who are enrolled in Medicare Part B, but who are not eligible for Medicare Savings Program benefits from the Medicaid program, generally have their Part B premium deducted from their Social Security benefits each month. Individuals who are not receiving such benefits may pay the premium to HHS. 42 U.S. C. § 1395s; 42 C.F.R. §§408.6 and 408.40 et seq.

37. The Social Security Administration determines Medicare eligibility, issues Social Security benefits, and deducts monthly Medicare Part B premiums from the Social Security benefits of persons who are not eligible for the Medicare Savings Program through the Medicaid program.

38. Because of the significant financial hardship imposed by these premium payments on low-income Medicare beneficiaries, and to ensure access to Medicare for those individuals, Congress created the Medicare Savings Program to pay those costs for such individuals.

39. Although the Medicare Savings Program benefit is provided through the Medicaid program, implementation requires adjustments to certain generally applicable procedures of the Medicare program. Thus, both the Medicaid and the Medicare sections of the Social Security Act, and the federal Medicaid and Medicare regulations, contain provisions that govern the operation of the Medicare Savings Program.

40. The Social Security Act provides for agreements (called "buy-in agreements") between the states and the Secretary of the Department of Health and Human Services for payment by the state Medicaid program of Medicare Part A and Part B premiums for individuals eligible for such payments. 42 U.S.C. §§ 1395v and 1395i-

11

2(g). Pennsylvania has entered into such an agreement with HHS, and through this agreement is required to pay Medicare premiums for all eligible persons.

41.  For most individuals Medicare Savings Program benefits from the Medicaid program are effective beginning in the month the individual applied, and DPW is required to start paying the Part B (and, if applicable, Part A) premiums the month the person is found eligible.  42 U.S.C. § 1395v(d)(2)(C); 42 C.F.R. § 407.47; 42 C.F.R. § 406.26.  These individuals are also entitled to retroactive MSP benefits for the three calendar months prior to the month of application if they met eligibility standards in those months.

42.  For one group of individuals, known as Qualified Medicare Beneficiaries, Medicare Savings Program benefits from the Medicaid program are effective the first day of the month following the month the individual is determined eligible for the MSP by DPW, and DPW is required to start paying the Part B (and, if applicable, Part A) premiums the month following the month the individual is found eligible.  42 U.S.C. § 1396d(a).

43.  HHS and SSA are prohibited from deducting the Part B premium from the Social Security or other federal benefits of persons found eligible for Medicare Savings Program benefits from the Medicaid program.  42 U.S.C. § 1395s(h); 42 C.F.R. § 408.6(b)(i).

44.  The Social Security Act requires that Medicaid "shall be furnished with reasonable promptness to all eligible individuals...."  42 U.S.C. § 1396a(a)(8).

45. The Social Security Act and the federal Medicaid regulations require that the Medicaid program be administered properly and efficiently.  42 U.S.C. § 1396a(a)(4)(A); 42 C.F.R. § 431.15.

46. The federal Medicaid regulations require that DPW must ensure that eligibility for benefits is determined "in a manner consistent with simplicity of administration and the best interests of the applicant or recipient."  42 C.F.R. § 435.902.

47. The federal Medicaid regulations also state that DPW "must –(a) Furnish Medicaid promptly to recipients without any delay caused by the agency's administrative procedures...." 42 C.F.R. § 435.930.

48. The Social Security Act and the federal Medicaid regulations require that any person whose claim for assistance is not acted upon promptly, or is denied, is entitled to notice and an opportunity for a fair hearing.  42 U.S.C. § 1396a(a)(3); 42 C.F.R. § 431.200 et seq.

49. Federal regulations authorize any remedial action which may be necessary to correct or eliminate the effects of an "error, misrepresentation or inaction" concerning Medicare enrollment. 42 C.F.R. § 407.32.

## STATEMENT OF FACTS

### A. Program Operation

50. Most people who are eligible to have their Medicare premiums paid by DPW under the Medicaid program receive that benefit through the Medicare Savings Program portion of Medicaid.

51. Several paths lead to MSP eligibility.  An individual may already be receiving Medicaid and become eligible for Medicare by satisfying an eligibility criterion

she had not previously satisfied, such as by reaching age 65. In this situation, SSA must first make a Medicare eligibility determination. Then DPW must take action so that the MSP part of DPW's Medicaid program pays her Medicare premiums in order for her to access the Medicare benefits without having to incur out-of-pocket costs for the premiums.

52. Alternatively, an individual who already has Medicare may apply for Medicaid. In this situation, it is likely that the individual has been paying the Part B premium, which is commonly done by deduction from her Social Security benefits. For these individuals already enrolled in Medicare Part B, the state's action of paying the premium under the Medicare Savings Program should result in the premium payment no longer being deducted from her Social Security benefits.

53. A third possibility involves an individual who was already determined eligible for Medicare but could not afford to pay the Part B premium, and therefore had not enrolled in Part B. As in the first-mentioned situation (see supra, paragraph 51), the state's payment of the premium under the Medicare Savings Program should enroll her in Medicare and activate her Medicare benefits.

54. For the Medicare Savings Program part of the Medicaid program to function properly and efficiently, and for benefits to be provided with reasonable promptness, DPW, HHS and SSA must exchange accurate information on a timely and regular basis to confirm Medicare eligibility, to start the state's payment of the premiums and, where relevant, to stop the deduction from monthly Social Security or other federal payments and to provide refunds of premiums deducted after the individual's MSP benefits started. These agencies have failed to develop a proper and efficient system for exchanging such

information.  As a result, Medicare Savings Program benefits from the Medicaid program are denied and delayed for indisputably eligible individuals.

55.  If an individual is identified through the exchange of information between DPW, HHS and SSA as eligible for Medicare and MSP benefits, the individual is supposed to be automatically processed for payment of the Medicare premiums by the Medicaid program, without the requirement of any action by the individual.

56.  The exchange of information between DPW, HHS and SSA is accomplished through electronic data exchange which occurs once a month. The data are then matched to identify individuals who are eligible for Medicare Savings Program benefits.

57.  In 1993, class action litigation was brought concerning the payment of Medicare premiums for Medicaid recipients in Pennsylvania.  <u>Action Alliance of Senior Citizens of Greater Philadelphia et al. v. Snider et al.</u>, No. 93-CV-4827.  In 1995, settlements reached in the <u>Action Alliance</u> case resolved some previous systemic problems, and more than doubled the number of individuals whose Medicare premiums were paid by the Pennsylvania Medicaid program.

58.  Because the data from DPW are accepted, processed and responded to only once a month by HHS and SSA, there are built-in delays of two to three months in initial enrollment into the Medicare Savings Program, even if everything goes perfectly.  In contrast, in the context of the Low Income Subsidy Program for Medicare Part D (prescription medications) which also allows enrollment through state-federal data transmission,  HHS accepts data as frequently as states are willing to transmit it and processes it on the same day or the next business day.

59.  Discrepancies in the data of the three agencies result in failures to identify

15

and enroll properly many individuals who are eligible for Medicare Savings Program benefits. Even a trivial discrepancy in the data being matched will result in a delay of many months, because the federal defendants fail or refuse to process and respond to data from DPW more than once a month. The lack of any timely system for correcting errors within each agency's system and between systems that do not readily communicate with each other results in delays that routinely extend to many months.

60. Even when a particular individual is identified by an official of SSA or DPW or HHS and steps are taken to enroll the individual in the Medicare Savings Program, the computer system often will not properly enroll the individual. Because of the delays in transferring information and the lack of coordination among the three agencies, individuals who are identified as eligible for immediate Medicare Savings Program benefits are forced to wait months and sometimes years to be added to the program.

61. Because of the failure of DPW, HHS and SSA to adequately and timely exchange information and enroll eligible persons, many eligible persons never receive the benefits of the Medicare Savings Program.

62. Because of the failure of DPW, HHS and SSA to enroll individuals properly into the Medicare Savings Program, HHS and SSA improperly deduct the Medicare Part B premium from the Social Security benefits or other monthly federal payments of eligible persons for months or even years and DPW fails to pay those premiums for months or even years.

63. Although SSA and HHS know in advance that an individual will become Medicare eligible, and know in advance if that individual already receives Medicaid and is eligible for MSP benefits, they will not permit DPW to submit Medicare Savings

16

Program enrollment data prior to the Medicare start date, thereby delaying Medicare Savings Program enrollment for two to three months, even if all goes perfectly. In contrast, the federal defendants permit and promote advance enrollment for the very same individuals into the Low Income Subsidy for Medicare Part D.

64. For individuals needing payment of premiums for Part A, SSA and HHS will not permit DPW to submit data for the Part A enrollment process prior to completion of the Part B enrollment process, thereby building in a delay of four to six months (because each part of the process takes a minimum of two to three months), even if all goes perfectly. As a result, individuals who are entitled to, and in need of, Part A coverage experience delays and denials of coverage.

65. Defendants, through electronic data exchange, identify and automatically enroll some individuals into Medicare through the Medicare Savings Program, but do not identify and automatically enroll all individuals receiving Medicaid who become eligible for Medicare and Medicare Savings Plan benefits after reaching 65 years of age. The failure to identify and enroll all individuals who are receiving Medicaid and become eligible for Medicare results in delays and denials of Medicare Savings Program benefits for such individuals, and also results in delays and denials of Part A coverage for eligible individuals.

66. DPW does not automatically determine eligibility for Part A premium payment whenever it is processing Part B premium payment for individuals who did not already have Medicare coverage when they applied for Medicaid. As a result, many individuals who should be receiving Medicare Part A coverage never receive it, because they cannot afford it without the Medicare Savings Program, and the Part A enrollment is

never processed, even though DPW has enrolled that individual into Part B.

67. DPW does not routinely evaluate eligibility for retroactive MSP benefits for the three calendar months prior to the month of application for individuals. As a result many individuals who should receive reimbursement for Part B premiums for the three calendar months prior to the months of application, which they paid out of pocket, do not receive that reimbursement. DPW's MSP application ("Mail-In Application For Payment of Medicare Part B Premium") does not ask if the individual wants retroactive MSP benefits, and DPW does not routinely provide notice about retroactive eligibility.

68. Because of the failure of DPW, HHS and SSA to properly and timely enroll eligible individuals into the Medicare Savings Program, some persons who are eligible for Medicare Part A and/or Part B never receive those Medicare benefits. These individuals are unable to participate in the Part A and/or Part B programs because they cannot afford to pay the premiums, and do not know that they are supposed to be automatically enrolled without cost.

69. Many health care providers are reluctant to accept Medicaid, and a significant number of health care providers who will not accept Medicaid will accept Medicare. Medicare coverage thus often provides broader access to health care than does Medicaid.

70. As a result of defendants' delays and denials of MSP benefits for eligible individuals, some individuals who are forced to pay for Medicare premiums out of pocket have difficulty paying for food, heat, housing or other necessary costs, because of their out-of-pocket costs for the $96.40 monthly Part B premium.

71. As a result of defendants' delays and denials of enrollment into Part A without an out-of-pocket cost, some individuals who are forced to forgo Medicare Part A

coverage are unable to access Medicare skilled nursing facility care or other needed health care.

B. Narcisa Garcia

72.  Narcisa Garcia is a 66-year-old woman who receives Social Security benefits of $695 per month.  Ms. Garcia has Medicare Part A and Part B benefits, and has been approved for Medicaid in Pennsylvania by the Department of Public Welfare.

73.  In October 2008, Ms. Garcia moved from Melbourne, Florida to Philadelphia, Pennsylvania.  When she lived in Florida, the State of Florida paid her Medicare Part B premiums and the premium was not deducted from her Social Security benefits.  Ms. Garcia informed the Social Security Administration of her move.

74.  In October, 2008, Ms. Garcia went to the Pennsylvania Department of Public Welfare to apply for Medicaid.  In late November she received a Notice from the Welfare Department telling her that she was approved for Medicaid and that the State of Pennsylvania would pay her Medicare Part B premiums.

75.  In January 2009, Ms. Garcia did not get her full Social Security payment.  Instead of $695, she only received $406.20.  Several days later, after her payment was reduced, she got a Notice from the Social Security Administration, telling her that because the State of Florida had stopped paying her Medicare Part B premiums, the money had been taken out of her check.

76.  In February 2009 Ms. Garcia also only received $406.20 from Social Security.  In March and April 2009, she received $599.

77.  Ms. Garcia went back to the Social Security Administration office twice to

try to fix this problem.  They told her that she needed to go the Department of Public Welfare to resolve the issue of the Medicare Part B premiums being taken out of her Social Security benefits.

78.  Ms. Garcia also went back to DPW three times.  DPW told Ms. Garcia that deduction of premiums from Social Security payments is a Social Security Administration issue and that SSA should be handling it.

79.  As a result of defendants' failure to enroll Ms. Garcia into the Medicare Savings Program in a timely manner, Ms. Garcia has been and is continuing to be harmed by having her Social Security benefits reduced, causing her hardship and difficulty paying rent and other bills.

C.  Sau Lin Sum So

80.  Sau Lin Sum So is a 69 year-old-woman.  Ms. Sum So is retired and receives gross monthly Social Security benefits of $1,148.40.

81.  Ms. Sum So initially became eligible for Medicare Part A and Part B benefits on October 1, 2004.   Since her initial date of eligibility for Medicare Part B, the monthly Medicare Part B premium has been deducted from Ms. Sum So's gross monthly Social Security benefit.

82.  In September 2008, Ms. Sum So became aware of Pennsylvania's Medicaid Medicare Savings Program.  On September 29, 2008, Ms. Sum So submitted an application for the Medicare Savings Program and submitted it to her local DPW office.

83.  In November 2008, Ms. Sum So contacted Community Legal Services, Inc. because she had not yet been enrolled in the Medicare Savings Program, although she was eligible.

84. Counsel for plaintiffs contacted DPW several times in November and was told that DPW had not approved Ms. Sum So for Medicare Savings Program benefits because DPW stated they did not have documentation of Ms. Sum So's residence. Although Ms. Sum So had previously provided this information, on November 20, 2008, counsel for plaintiffs again provided documentation of Ms. Sum So's residence.

85. On December 8, 2008, counsel for plaintiffs was contacted by DPW and informed Ms. Sum So had been found eligible for Medicare Savings Program benefits back to the month of application. At the request of counsel for plaintiffs, DPW staff provided by facsimile copies of computer screen printouts stating Ms. Sum So was eligible for Medicare Savings Program benefits. DPW never provided a notice of eligibility to Ms. Sum So or to counsel for plaintiffs.

86. Ms. Sum So was also eligible for retroactive payments of the Medicare Part B premium for three months prior to her date of application.

87. On December 10, 2008, counsel for plaintiffs contacted DPW and inquired whether DPW had also found her eligible for retroactive payments for the three months prior to the month of application. Counsel for plaintiffs was told by DPW staff that there was no such regulation providing for three months of retroactive payments for the months prior to the month of application. Counsel for plaintiffs requested DPW staff check with his supervisor. The DPW supervisor again said there was no such regulation that provided for retroactive benefits. On December 10, 2008, counsel for plaintiffs sent to DPW a letter citing the relevant portion of the Pennsylvania Medical Assistance Handbook which states that individuals receiving Medicare Savings Program benefits, who are not Qualified Medicare Beneficiaries, are entitled to retroactive Medicare

Savings Program benefits for the three months prior to the month of application if they met the eligibility standards in those months.

88. In response to counsel for plaintiffs December 10, 2008 letter, DPW contacted counsel for plaintiffs by telephone and told them DPW had found Ms. Sum So eligible for retroactive benefits for the three months prior to the month of application. Again, neither Ms. Sum So nor counsel for plaintiffs received written notice of this determination by DPW.

89. To date, Ms. Sum So's Social Security benefit continues to be reduced by $96.40 per month, the cost of the Medicare Part B premium. Additionally, Ms. Sum So has not received reimbursement for the months subsequent to the date of her application or for the three months prior to her month of initial application.

90. As a result of defendants' failure to enroll Ms. Sum So into the Medicare Savings Program in a timely manner, Ms. Sum So has been and is continuing to be harmed by having her Social Security benefits reduced, causing her hardship and difficulty paying bills, buying food, and providing for herself.

D. Class Members

91. Like the named plaintiffs and individuals served by CARIE and the Arc of Pennsylvania, members of the class are being and will be harmed by defendants' failure to properly and efficiently administer the Medicare Savings Program part of the Medicaid program and to provide timely Medicare Savings Program benefits; by defendants' failure to promptly enroll individuals who are eligible for Medicare Savings Program benefits without requiring them to either pay the covered Medicare premiums out of pocket or go without Medicare Part A or B coverage for a period of time; and by

defendants' failure to provide notice and the opportunity for a hearing to individuals who are being denied timely Medicare Savings Program benefits through the Medicaid program.

## INADEQUACY OF REMEDY AT LAW AND PROPRIETY OF ISSUANCE OF A WRIT OF MANDAMUS

92.  Plaintiffs are presently suffering irreparable injury that will continue in the future by reason of the defendants' actions and inactions complained of herein. Plaintiffs have no adequate remedy at law. Only the declaratory, injunctive and mandamus relief that this Court can provide will fully redress the wrongs done to plaintiffs.

93.  Plaintiffs have a clear right to the relief sought. There is no other adequate remedy available to correct an otherwise unreviewable defect. The federal defendants have a plainly defined and nondiscretionary duty to provide the relief that plaintiffs seek.

## CAUSES OF ACTION

94.  Defendants' failure to promptly enroll individuals who are eligible for Medicare Savings Program benefits through the Medicaid program into Medicare Part A and Part B without requiring the individual to either pay the premiums out of pocket or forgo coverage for a period of time violates the Social Security Act, 42 U.S.C. §§ 1395v, 1395s, and 1396a et seq., federal regulations, 42 C.F.R. Parts 406, 407, 408 and 430 et seq., the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution, 5 U.S.C. §§ 701-706 and 42 U.S.C. §1983.

95.  The failure of the state defendants Richman and Chambers to pay the Medicare Part A and Part B premiums in a timely manner for individuals eligible for the Medicare Savings Program benefits from the Medicaid program, their failure to automatically evaluate eligible individuals for enrollment into and payment of premiums for Medicare Part A, and their failure to routinely evaluate eligibility for retroactive MSP benefits for the three months prior to the month of application, violate the Social Security Act, 42 U.S.C. §§ 1395v, 1395s, and 1396a et seq., and federal regulations, 42 C.F.R. Parts 406, 407, 408, and 430 et seq., the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1983.

96.  Federal defendants Johnson and Astrue's improper deduction of Medicare premiums from the Social Security benefits and other federal payments of persons who are eligible for Medicare Savings Program benefits from the Medicaid program violates the Social Security Act, 42 U.S.C. §§ 1395v, 1395s, and 1396a et seq., and federal regulations, 42 C.F.R. parts 407, 408 and 430 et seq., the Due Process Clause of the Fifth Amendment to the United States Constitution and 5 U.S.C. §§ 701-706.

97.  Defendants' failure to provide Medicare Savings Program benefits from the Medicaid program in a timely, proper and efficient manner to eligible individuals is arbitrary and capricious and violates the Social Security Act, 42 U.S.C. §§ 1395v, 1395s, and 1396a et seq., the federal regulations, 42 C.F.R. parts 406, 407, 408 and 430 et seq., the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution, 5 U.S.C. §§ 701-706, and 42 U.S.C. § 1983.

98. Defendants' failure to provide notice and the opportunity for a hearing to individuals who are being denied timely Medicare Savings Program benefits violates the

Social Security Act, 42 U.S.C. § 1396a(a)(3), the federal regulations, 42 C.F.R. §
431.200 et seq., and the Due Process Clauses of the Fifth and Fourteenth Amendments to
the United States Constitution, 5 U.S.C. §§ 701-706, and 42 U.S.C. § 1983.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, plaintiffs pray that this Honorable Court:

(1) Certify this action as a class action;

(2) Declare defendants' practices invalid and illegal under the Social Security Act,
42 U.S.C. §§ 1395v, 1395s, and 1396a et seq., and federal regulations, 42 C.F.R. parts
407, 408 and 4430 et seq., the Administrative Procedures Act, 5 U.S.C. §§ 701-706, the
Due Process Clauses of the Fifth and Fourteenth Amendments to the United States
Constitution, and 42 U.S.C. § 1983;

(3) Permanently enjoin defendants from denying or delaying Medicare Savings
Program benefits from the Medicaid program to eligible individuals, from improperly
deducting Medicare premiums from the Social Security benefits and other federal
payments of eligible individuals and from denying or delaying payment of refunds of
improperly paid Medicare premiums to eligible individuals;

(4) Permanently enjoin defendants from refusing to provide notice to individuals
whose Medicare Savings Program benefits are denied or delayed;

(5) Order defendants to send notice to all members of the class that they may have
been denied Medicare Savings Program benefits to which they are entitled and that they
have a right to request a refund of any Medicare premiums which they have improperly

been forced to pay;

 (6) Award plaintiffs their costs and reasonable attorneys' fees; and

 (7) Provide such other and further relief as this Court deems just and proper.

    Respectfully submitted,

    *Amy E. Hirsch*

    Amy E. Hirsch, Attorney I.D. No. 42724
    Validation of Signature Code: AEH8241
    Pamela Walz, Attorney I.D. No. 57376
    Elizabeth Shapiro, Attorney I.D. No. 79612
    John Whitelaw, Attorney I.D. No. 47663
    Samuel Brooks, Attorney I.D. No. 205965
    Community Legal Services, Inc.
    3638 North Broad Street
    Philadelphia, PA 19125
    (215) 227-2400

    Patricia B. Nemore
    Vicki Gottlich
    Center for Medicare Advocacy, Inc.
    1025 Connecticut Ave., NW, Suite 709
    Washington, DC 20036
    (202) 293-5760

    Gill Deford
    Wey-Wey Kwok
    Center for Medicare Advocacy, Inc.
    P.O. Box 350
    Willimantic, CT 06226
    (860) 456-7790

    Attorneys for Plaintiffs