UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NARCISA GARCIA, et al.,  :
 :
      Plaintiffs,  :
 :  Civil Action No. 09-1747
v.  :
 :
KATHLEEN SEBELIUS, et al.,  :
 :
      Defendants.  :

## JOINT STATUS REPORT AND REQUEST TO CONTINUE CASE IN CIVIL SUSPENSE

Pursuant to the Court's Order, dated September 15, 2009, the parties are pleased to submit this Joint Status Report to inform the Court of their very considerable progress in settlement negotiations and of their plans for continued settlement negotiations, and respectfully request that the Court continue this case in Civil Suspense for a sixty-day period to enable the parties to continue to focus their efforts on resolution of the case.

This case involves allegations of systemic problems leading to alleged delays in the provision of Medicare Buy-In benefits through the Medicaid program for elderly and disabled individuals in Pennsylvania. Provision of these benefits requires the successful exchange and processing of data between the Pennsylvania Department of Public Welfare and two federal agencies: the Centers for Medicare and Medicaid Services of the United States Department of Health and Human Services, and the Social Security Administration. The settlement discussions therefore require involvement of computer systems, operations and policy staff from the three different agencies, as well as counsel for the plaintiffs, state and federal defendants. The parties have made substantial progress in their settlement discussions to date, but need additional time.

Since the Court's Order on September 15th, the parties have taken the following steps in the negotiations:

1. The parties have been conferring by telephone and email on a regular basis in addition to the in-person meetings described below.

2. On September 29, 2009, counsel for the plaintiffs provided counsel for the federal defendants with a memo proposing steps to remedy plaintiffs' concerns and setting out a series of questions plaintiffs would like answered to assist in the resolution of the issues in this case. Federal defendants have been working to assemble the requested information and respond to plaintiffs' proposals and concerns.

3. On October 5, 2009, staff and counsel from the Pennsylvania Department of Public Welfare (DPW) met in person in Baltimore, MD with staff and counsel for the federal agencies: the Centers for Medicare and Medicaid Services (CMS) of the United States Department of Health and Human Services, and the Social Security Administration (SSA), to discuss the technical issues involved in daily exchange of data between DPW and the federal agencies, and the technical issues involved in simultaneous submission of Part A and Part B data, and other IT/systems concerns/questions Pennsylvania has regarding data submission.

4. Since that meeting, staff at DPW have been working to evaluate and implement the necessary computer system changes. DPW is working on plans for an "end to end" live test of the daily data exchange prior to implementation. CMS stands ready to assist DPW once DPW is ready to conduct such testing.

5. On October 14, 2009, counsel for the state defendants provided to counsel for plaintiffs a proposal listing the actions which DPW was proposing to take, including daily

submission of data to CMS, and counsel for the plaintiffs and counsel for the state defendants discussed plaintiffs' concerns.

6. On November 12, 2009, counsel for the plaintiffs met in person with counsel for the state defendants and policy and operations staff for the Pennsylvania DPW in Harrisburg, PA, for several hours, for a wide-ranging and very productive discussion of the progress that has been made, remaining issues involving the state defendants, and possible approaches to resolving them. Counsel for the federal defendants from the Department of Justice and from CMS also participated in that meeting by telephone. Highlights and next steps include:

a. DPW is currently testing changes to its computer programs to identify individuals who have Part B Buy-In, but who do not have Part A Buy-In, and to enroll them into Part A Buy-In. DPW currently expects to complete these changes within the next two months, to begin doing computer runs in January 2010, and to complete the process of identifying individuals by the end of March. This would be a permanent change to existing software that would then automatically enroll individuals as they become eligible for Part A in the future.

b. DPW is investigating how best to approach the issue of individuals whose Medicare eligibility is based on a spouse's Medicare claim number, and who would be eligible for premium-free Part A.

c. Questions concerning timely Medicare and Buy-In enrollment of individuals who are not "known" to CMS, and the application process for Medicare and auto-accretion process for Medicare Buy-In for SSI recipients who are aged 65 and older will be discussed at the meeting with federal defendants on November 17, 2009.

d. DPW is working on edits to the computer system which are needed in order to submit Part A and Part B Buy-In requests simultaneously. CMS has provided information

necessary to make these changes, which will have to be verified with CMS once they are completed. These changes will be part of the package of changes needed for DPW to submit data on a daily basis to CMS. DPW expects to test these changes by the end of the year, and to fully implement them by the end of the first quarter of 2010. An "end to end" test with CMS will be done to ensure the changes are working correctly prior to implementation.

 e. Plaintiffs will draft proposed language for DPW's consideration, to be added to the DPW Eligible Notices that are sent to individuals who have been found eligible for the Part B Buy-In, notifying them that if they do not have Part A, it can be provided and paid for through the Buy-In.

 f. DPW is changing the schedule for submitting Buy-In data to CMS in advance of making a permanent enhancement to submit Buy-In data daily. On an interim basis, effective this month, DPW will submit the data to CMS on the 15th day of each month rather than the 25th day of each month. With this earlier submission date, the federal agencies can process the data within the same month. If an individual DPW record matches and is accepted by the federal agencies, this scheduling likely means that the Buy-In will be effective the first day of the next month and the individual's Social Security payment will be increased because the premium for Part B will not be deducted. In many cases, this interim change will speed up the process of getting the Buy-In by one month.

 g. DPW is working on the computer system changes needed to submit data on a daily basis to CMS. DPW expects this to be operational by the first quarter of 2010. DPW is still reviewing and evaluating the software process that would be needed to accept data back from CMS on a daily basis. DPW will discuss internally the changes that would be needed to operationalize daily receipt of data from CMS, including changes to the timing of work needed

to resolve mis-matches and error messages, and will then discuss with plaintiffs the issues involved and the time frame for making this change.

  h. DPW will routinely evaluate applications to determine eligibility for retroactive MSP benefits. DPW is in the process of revising the Medicare Savings Program application, which includes the Buy-In, and Plaintiffs will provide draft language before the end of November for DPW to consider, to elicit the necessary information to determine eligibility for retroactive MSP benefits. DPW will then provide plaintiffs with an opportunity to review the revised MSP application. Plaintiffs will also provide DPW with draft language for an informational flyer to be provided to clients explaining the availability of retroactive MSP benefits. Counsel for plaintiffs will provide DPW with suggested changes to update the Medicaid Handbook concerning MSP benefits, and DPW will draft revisions to the Handbook.

  i. DPW is evaluating and analyzing possible changes to strengthen handling mis-matches and resolution of error messages. DPW is considering use of monthly supervisory reports and/or of Quality Control random samples to ensure timely action to resolve mis-matches. DPW is also looking to develop a longitudinal tracking system. DPW and plaintiffs will discuss this issue further, and the timing of notices to clients informing them of an error. Plaintiffs will provide draft language for DPW's consideration for the notice.

  j. DPW will discuss internally whether or not local County Assistance Office staff should contact CMS for help in resolving individual mis-matches, or whether contacts with CMS should go through the central office in Harrisburg. DPW will do a memo to field staff with instructions on seeking help in resolving a mis-match and appropriate contact numbers.

k. Counsel for federal defendants will work with SSA to provide a list of people at local SSA field offices for County Assistance Office staff to contact to determine how best to resolve problems for individual clients.

l. Once all of the systems changes are agreed upon, DPW will do an operations memo and Handbook changes, and any necessary training for staff.

7. On November 17, 2009, counsel for plaintiffs and counsel for state defendants will meet in person with counsel for federal defendants in Washington D.C., including counsel from the Department of Justice, the Social Security Administration, and the Centers for Medicare and Medicaid Services, and any chosen representatives from the federal agencies, to discuss the progress made and remaining issues, including the proposals and questions raised by plaintiffs' counsel in their September 29th memo.

8. In addition to the discussions described above, counsel for the parties have been working together to respond to and resolve problems for individual class members on an ongoing basis.

The parties therefore respectfully request that this Court continue the case in Civil Suspense for a sixty day period, to permit the parties to continue their settlement negotiations, and to focus their energies on amicable resolution of the case.

Respectfully submitted,

Dated: November 16, 2009

/s/Amy E. Hirsch
Amy E. Hirsch, Attorney I.D. No. 42724
Community Legal Services, Inc.
3638 North Broad Street
Philadelphia, PA 19125
(215) 227-2400

Counsel for Plaintiffs

Dated: November 16, 2009          /s/Barry N. Kramer
                                  Barry N. Kramer
                                  Chief Deputy Attorney General
                                  Office of Attorney General
                                  21 S. 12th St., 3rd Floor
                                  Philadelphia, PA 19107

                                  Counsel for State Defendants


Dated: November 16, 2009          /s/ C. Lee Reeves
                                  C. Lee Reeves
                                  United States Department of Justice
                                  Civil Division, Federal Programs Branch
                                  20 Massachusetts Ave., N.W., Room 7308
                                  Washington, D.C. 20530

                                  Counsel for Federal Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NARCISA GARCIA, et al., | : | CIVIL ACTION |
| Plaintiffs, | : | |
| v. | : | |
| KATHLEEN SEBELIUS, et al., | : | No. 09-1747 |
| Defendants. | : | |

**ORDER**

AND NOW, this _____, day of November, 2009, upon the joint request of all parties, it is hereby ORDERED that this matter will remain in civil suspense for another sixty days from the date of this Order and that counsel shall provide a joint status report on settlement negotiations to the Court on or before the final day of civil suspense.

BY THE COURT:

_____
Sanchez, J.