IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NARCISA GARCIA, et al.,

    Plaintiffs,

v.

KATHLEEN SEBELIUS, et al.,

    Defendants.

: CIVIL ACTION
:
: No. 09-CV-1747

## JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT BETWEEN PLAINTIFFS AND DEPARTMENT OF PUBLIC WELFARE DEFENDANTS

Plaintiffs Narcisa Garcia, et al. and Department of Public Welfare ("DPW") defendants Richman and Chambers move this Court for entry of an Order:

1. Certifying the plaintiff class as defined in the Settlement Agreement, pursuant to Rule 23 (b)(2), Fed. R. Civ. P.;

2. Appointing plaintiffs' existing counsel as Class Counsel, pursuant to Rule 23 (g), Fed. R. Civ. P.; and

3. Approving the parties' Settlement Agreement pursuant to Rule 23(e), Fed. R. Civ. P.

### I. INTRODUCTION AND BACKGROUND

On April 24, 2009, plaintiffs Narcisa Garcia, et al., brought this action to challenge DPW's alleged failure to provide timely payment of Medicare premiums for low-income elderly individuals and individuals with disabilities, and to provide adequate and accurate notices to eligible persons concerning the denial or delay of those benefits.

On April 28, 2009, plaintiffs filed their Motion for Class Certification and Appointment of Class Counsel, and on June 26, 2009, plaintiffs filed an Amended Complaint and an Amended Motion for Class Certification and Appointment of Class Counsel. Following extensive negotiations, the parties have now reached a mutually agreeable settlement, and seek this Court's approval of the Settlement Agreement. The Settlement Agreement is attached as Attachment A to this Motion.

## II. PROPOSED SETTLEMENT

As set forth in the proposed Settlement Agreement between Plaintiffs and Department of Public Welfare Defendants, the parties stipulate to certification of a class pursuant to Fed. R. Civ. P. 23(b)(2), consisting of:

> all persons living in Pennsylvania who are, were or will be eligible for Medicare benefits, and who are, were or will be simultaneously also eligible to have their Medicare premiums paid for by the Pennsylvania Medicaid program's Medicare Savings Program, but whose Medicare Savings Program benefits are, were or will be denied or delayed as a result of defendants' failure to properly and efficiently administer the Medicare Savings Program part of the Medicaid program.

The Settlement Agreement is not a consent decree, and is not enforceable in court proceedings. The Settlement Agreement does not prohibit any member of the class from re-litigating any claim raised in the lawsuit. If a new action is filed, the issue litigated shall be limited to whether or not defendants are in compliance with applicable law and regulations and not whether defendants are in compliance with the Settlement Agreement.

The proposed Settlement Agreement provides that DPW will submit Medicare Savings Program enrollment requests to the federal Centers for Medicare and Medicaid Services ("CMS") on a daily basis, and will accept responses back from CMS on a daily

basis. DPW will also submit enrollment requests simultaneously for Part A and Part B. It is expected that these actions will shorten the time needed for enrollment into the Medicare Savings Program.

DPW will also establish and implement a system to timely and effectively resolve instances where CMS informs DPW that it cannot perform the requested enrollment, including tracking of actions by local County Assistance Offices ("CAO") to resolve errors, with longitudinal tracking and supervisory oversight, and a heightened alert mechanism for cases which have been unresolved for more than thirty days.

DPW will also provide notice to applicants concerning delays in effectuating their enrollment into the Medicare Savings Program, and will periodically identify all individuals 65 years of age or older who are not enrolled in the Medicare Savings Program for both Parts A and B and promptly submit requests to CMS to enroll such individuals.

DPW will evaluate and determine whether each applicant is eligible for Medicare Savings Program benefits in the three calendar months prior to the month of application (retroactive benefits).

DPW will work with counsel for plaintiffs to develop written protocols and revised instructions and training for CAO staff and revised application forms and notices for applicants for Medicare Savings Program benefits, including information on availability of retroactive benefits.

DPW will provide quarterly reports to plaintiffs' counsel concerning the number of individuals submitted to CMS for enrollment, the number of individuals not successfully enrolled, the delays in resolving cases, the number of individuals found

eligible and rejected for retroactive benefits, the numbers of individuals identified by computer runs as not being enrolled in both Parts A and B, and the number of notices sent informing applicants of a delay in processing their Medicare Savings Program enrollment.

DPW's counsel will meet quarterly with plaintiffs' counsel for a period of eighteen months to discuss the status of actions that DPW has agreed to take and any issues that may arise in implementation of the Settlement Agreement.

DPW will pay $35,000 to class counsel as a full, final and complete settlement of all claims by plaintiffs for costs, expert's fees and attorneys' fees.

### III. NOTICE OF PROPOSED SETTLEMENT

Although settlement of a class action usually requires notice to class members and a hearing, the parties believe that under the particular circumstances of this case, Rule 23(e) does not require such notice and hearing. In particular, Rule 23(e)(1) and (2) require notice and hearing if class members would be bound by the proposed settlement. However in this case, paragraph 6 of the Settlement Agreement specifically provides that "[t]his agreement does not prohibit any member of the class from re-litigating any claim raised in the lawsuit."

However, if the Court feels that notice to class members and a hearing concerning approval of the proposed settlement is necessary, the parties request that the Court approve notice by the following means: (i) posting the proposed Settlement Agreement and Notice of the hearing on the public website of Community Legal Services, Inc. and on the public website of the Center for Medicare Advocacy; (ii) posting the proposed Settlement Agreement and Notice of the hearing on the public website of the Center for

4

Advocacy for the Rights and Interests of the Elderly and on the public website of The Arc of Pennsylvania, all of which provide advice and assistance to low-income individuals with disabilities and to low-income elderly individuals.

IV. **NO SIDE AGREEMENTS**

Pursuant to Federal Rule of Civil Procedure 23(e)(3), the parties declare that there are no other agreements made in connection with the proposed settlement.

V. **CONCLUSION**

Based on the foregoing, the parties respectfully request that this Court enter an Order certifying the plaintiff class, appointing class counsel, and approving the Settlement Agreement. A proposed Order is attached.

Respectfully submitted,

Dated: April 12, 2010

*Amy E. Hirsch*
Amy E. Hirsch, Attorney I.D. No. 42724
Community Legal Services, Inc.
3638 North Broad Street
Philadelphia, PA 19125
(215) 227-2400

Counsel for Plaintiffs

Dated: April 12, 2010

*Barry Kramer*
Barry N. Kramer
Chief Deputy Attorney General
Office of Attorney General
21 S. 12th St., 3rd Floor
Philadelphia, PA 19107

Counsel for State Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NARCISA GARCIA, et al., | CIVIL ACTION |
| Plaintiffs, | |
| v. | No. 09-1747 |
| KATHLEEN SEBELIUS, Secretary of the United States Department of Health and Human Services, et al., | |
| Defendants. | CLASS ACTION |

## SETTLEMENT AGREEMENT BETWEEN PLAINTIFFS AND DEPARTMENT OF PUBLIC WELFARE DEFENDANTS

The plaintiffs and Department of Public Welfare defendants Estelle Richman and Denise Chambers (including their agents and successors in office) (together "DPW"), on condition that the Court so approves, in settlement of this matter, hereby enter into this Settlement Agreement ("Agreement") as follows:

I. **INTRODUCTION**

1. Plaintiffs brought this action to challenge DPW's alleged failure to provide timely payment of Medicare premiums for low-income elderly individuals and individuals with disabilities, and to provide adequate and accurate notices to eligible persons concerning the denial or delay of these benefits. DPW denies all liability but, in the interests of efficiency and to minimize costs, agrees to enter into this Agreement in order to resolve this matter amicably.


EXHIBIT A

## II. GENERAL PROVISIONS

2. This Agreement is not a consent decree, nor do the plaintiffs and DPW defendants intend it to be construed as such. It does not operate as an adjudication of the merits of this litigation.

3. The parties stipulate to the certification of the following plaintiff class: all persons living in Pennsylvania who are, were, or will be eligible for Medicare benefits, and who are, were, or will be simultaneously also eligible to have their Medicare premiums paid for by the Pennsylvania Medicaid program's Medicare Savings Program, but whose Medicare Savings Program benefits are, were, or will be denied or delayed as a result of defendants' failure to properly and efficiently administer the Medicare Savings Program part of the Medicaid program. The parties further stipulate to the appointment of plaintiffs' existing counsel, Community Legal Services and the Center for Medicare Advocacy, to serve as counsel for the class.

4. The plaintiffs and DPW defendants request the Court to approve this Agreement and dismiss the claims against DPW defendants, pursuant to Fed. R. Civ. P. 41(a)(2). Court approval of this Agreement is sought solely to comply with Fed. R. Civ. P. 23(e) and does not convert this Agreement into an order of court or a consent decree.

5. In addition to the regularly scheduled meetings referenced in ¶ 30, infra, should plaintiffs believe that DPW is not complying with a term of this Agreement, plaintiffs' sole recourse is to advise counsel for DPW of said non-compliance and to work cooperatively with DPW to remedy said non-compliance. DPW agrees to cooperate fully with plaintiffs and to make best efforts to promptly remedy the alleged non-

compliance. Under no circumstances may plaintiffs move to enforce this Agreement in court proceedings or move for contempt against DPW or Commonwealth defendants.

6. This agreement does not prohibit any member of the class from re-litigating any claim raised in the lawsuit. If a new action is filed, the issue litigated shall be limited to whether or not Commonwealth defendants are in compliance with applicable law and regulations and not whether defendants are in compliance with this Agreement.

7. Upon final Court approval of the Agreement, the Commonwealth of Pennsylvania, on behalf of DPW, will pay the total, all-inclusive sum of thirty-five thousand dollars ($35,000.00) to class counsel, Community Legal Services, as a full, final, and complete settlement of all claims by plaintiffs for costs, expert's fees and attorneys' fees that plaintiffs or their attorneys sought or could have sought to recover in the above-captioned action, pursuant to any federal or state statute or rule of court. Nothing in this Agreement shall entitle plaintiffs to any further costs, expenses, expert's fees and attorney's fees.

8. Paragraphs 2-7 are essential to this Agreement. In the event that any of these paragraphs is found invalid, this Agreement shall be null and void.

### III. ACTIONS TO ENSURE THAT ELIGIBLE INDIVIDUALS ARE PROMPTLY IDENTIFIED AND ENROLLED IN THE MEDICARE SAVINGS PROGRAM (MSP) AND RECEIVE TIMELY INFORMATION CONCERNING THE STATUS OF THEIR CASES

9. Within 90 days after the Court's final approval of this Agreement, DPW shall begin to submit Medicare Savings Program ("MSP") enrollment requests for Parts A and B to the Centers for Medicare and Medicaid Services ("CMS") on a daily basis.

10. Within 210 days after the Court's final approval of this Agreement, DPW shall begin to accept responses from CMS to its MSP enrollment requests on a daily basis.

11. Within 120 days after the Court's final approval of this Agreement, DPW shall establish and implement a system to timely and effectively resolve instances where CMS informs DPW that it cannot perform the requested enrollment. This system shall include tracking of actions by local County Assistance Offices ("CAOs") to resolve CMS-identified errors as described above, with timeframes to ensure timely resolution and supervisory oversight to ensure that timeframes are adhered to. The system shall provide for longitudinal tracking of errors, with a heightened alert mechanism for cases which have been unresolved for more than thirty days. This system shall be developed in consultation with plaintiffs' counsel.

12. Beginning October 1, 2010, in each case where MSP enrollment has not been effectuated (including restoration of the premium amount to the Social Security benefits, where applicable) in (a) the month after the month of approval by DPW, for those cases where the MSP request is submitted to CMS before the deadline for that calendar month; and (b) the second month after the month of approval by DPW for those cases where the MSP request is submitted to CMS after the deadline for that calendar month, DPW shall issue a notice informing the applicant of the delay. The form of the notice is attached hereto as Exhibit A.

13. DPW will continue to periodically and not less than once every two calendar months, identify all individuals 65 years of age or older who are not enrolled in the MSP for both Parts A and B of the Medicare program. DPW shall continue to

4

promptly submit requests to CMS to enroll such individuals into the Medicare Part(s) to which they are entitled.

14. In the case of individuals who are eligible but not enrolled in the MSP for both Parts A and B, DPW will begin submitting enrollment requests for both Parts simultaneously within 90 days after the Court's final approval of this Agreement.

15. DPW will work with plaintiffs' counsel to develop written protocols within 120 days after the Court's final approval of this Agreement for situations in which:

   a. CAO staff will contact the DPW staff person(s) responsible for transmitting MSP enrollment and payment data to SSA for assistance with and resolution of enrollment problems; and

   b. CAO staff will be instructed to contact staff at Social Security Administration field offices to resolve enrollment problems.

16. Within 150 days after the Court's final approval of this Agreement, DPW shall inform the local CAOs in writing of the new requirements, procedures, protocols, and timelines for resolving errors in submissions to CMS. DPW shall consult with plaintiffs concerning the content of this communication.

17. Within 210 days after the Court's final approval of this Agreement, DPW shall provide training to all CAO staff on how to enroll eligible individuals into the MSP for Medicare Parts A and B, how to provide applicants and recipients with correct information about their Medicare status and eligibility for Medicare and MSP benefits, and the protocols for resolving enrollment problems. DPW shall inform plaintiffs' counsel regarding the scheduling of this training and shall consult with plaintiffs' counsel

in the development of the training protocol. DPW shall establish a training protocol so that new CAO staff receives this information.

18. DPW will continue to evaluate and determine whether each applicant is eligible for MSP benefits in the three calendar months prior to the month of application (retroactive benefits). In January 2010, DPW issued instructions to CAO staff, a copy of which has been provided to plaintiffs, on evaluating eligibility for retroactive MSP benefits and shall continue to consult with plaintiffs' counsel on the content of such instructions. In each case in which DPW determines that an applicant is not eligible for retroactive benefits, DPW will provide a denial notice stating the reasons for such denial and explaining the applicant's right to appeal. DPW shall consult with plaintiffs' counsel concerning this revision to the denial notice.

19. Within 180 days after the Court's final approval of this Agreement, DPW will revise its "Mail-In Application for Payment of Medicare Part B Premium" so that eligibility for retroactive MSP benefits can be determined. Plaintiffs are being consulted and will be provided a copy of the revised document.

20. Within 180 days after the Court's final approval of this Agreement, DPW will revise its Medical Assistance Eligibility Handbook to provide information to CAO staff on the correct procedures for MSP enrollment and to instruct CAO staff to evaluate each case for retroactive eligibility. DPW shall consult with plaintiffs' counsel concerning these revisions.

21. Beginning October 1, 2010, DPW shall send a notice to each individual who is found eligible for MSP benefits stating that retroactive benefits may be available and identifying the appropriate steps to be taken to obtain such benefits. Thus, the

following text is being added to the current notice text: "You may also be eligible for a refund of the Part B premiums that were taken out of your Social Security check for up to three months before you applied for Medical Assistance. If DPW has not approved you for Medicare Buy-In for the three months before you applied, you can appeal."

## IV.  REPORTS

22. Beginning sixty days after the Court's final approval of this Agreement, DPW shall, by the 30th day of the first month after each quarter produce and provide to plaintiffs' counsel quarterly reports showing monthly detail as described in paragraphs 23 through 28.

    23. The total number of:

        a. Individuals submitted to CMS for payment of Part B premium only.

        b. Individuals submitted for Medicare Part A enrollment only.

        c. Individuals submitted for both Medicare Part A and B enrollment.

    24. For each category described in paragraph 23, the number of individuals found eligible by DPW for MSP but not successfully enrolled or placed in the MSP by:

        a. The month after the month of submission by DPW to CMS for individuals submitted before the monthly deadline; and

        b. The second month after the month of submission by DPW to CMS for individuals submitted after the monthly deadline for that calendar month.

7

25. The number of cases in which CMS/SSA rejected placement in the Medicare Savings Program or enrollment separated by category described in paragraph 23, and providing

   a. The number of cases pending more than 60 days from date of initial rejection by CMS.

   b. The number of cases pending more than 90 days from date of initial rejection by CMS.

26. The total number of:

   a. Individuals found eligible for retroactive MSP benefits.

   b. Individuals rejected for retroactive MSP by reason code.

27. The dates of any computer runs performed by DPW pursuant to paragraph 13, and:

   a. The total number of individuals identified in paragraph 13 as not being enrolled in both Parts A and B;

   b. The total number of individuals identified in paragraph 13 as not being enrolled in both Parts A and B, but not submitted by DPW to CMS for enrollment, with the reason for such non-submission.

28. After DPW's computer programs have been re-programmed to generate the notice, the total number of notices sent informing applicants of a delay in processing their MSP enrollment itemized by category as described in paragraph 23.

## V.  MISCELLANEOUS

29. Except as otherwise provided in this Agreement, all provisions of this Agreement are effective sixty days after the date the Court gives final approval to this Agreement. It is understood and agreed that, as applicable, all time limits imposed in the Agreement are based on the assumption that the federal defendants will have

8

implemented any applicable changes to their processes and procedures that impact DPW's implementation of this Agreement.

30. DPW's counsel agrees to meet with plaintiffs' counsel quarterly for a period of eighteen months to discuss the status of actions that DPW has agreed to take in this settlement agreement and any issues which may arise in its implementation.

Dated: April 12, 2010

*[signature]*

Amy E. Hirsch, Attorney I.D. No. 42724
Pamela Walz, Attorney I.D. No. 57376
Elizabeth Shapiro, Attorney I.D. No. 79612
John Whitelaw, Attorney I.D. No. 47663
Samuel Brooks, Attorney I.D. No. 205965
Community Legal Services, Inc.
3638 North Broad Street
Philadelphia, PA 19125
(215) 227-2400

Patricia B. Nemore
Vicki Gottlich
Center for Medicare Advocacy, Inc.
1025 Connecticut Ave., NW, Suite 709
Washington, DC 20036
(202) 293-5760

Gill Deford
Wey-Wey Kwok
Center for Medicare Advocacy, Inc.
P.O. Box 350
Willimantic, CT 06226
(860) 456-7790
Counsel for Plaintiffs

Dated: April 12, 2010

*[signature]*

Barry N. Kramer
Chief Deputy Attorney General
Office of Attorney General
21 S. 12th St., 3rd Floor
Philadelphia, PA 19107

Counsel for State Defendants

9

| county | dist | record # |
|--------|------|----------|

Name
Address

## DELAY IN BUY IN ENROLLMENT

Dear _____

☐ We are working on paying your Medicare premiums but we need some more information. We are giving you an envelope so you can send the information to us.

_____
_____
_____
_____

☐ We do not need any more information from you at this time. We are working toward getting you enrolled for payment of your premiums. You should be enrolled by _____.

☐ Other:

_____
_____
_____
_____

If Medicare premiums are being taken out of your Social Security, you will get a refund for the months starting when you applied (and you may also get a refund for the 3 months before you applied).

If you have questions, call your caseworker at _____.

If you need legal help or you have questions, you can also call your local legal services office.

Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NARCISA GARCIA, et al., | : |
| | : CIVIL ACTION |
| Plaintiffs, | : |
| | : No. 09-CV-1747 |
| vs. | : |
| | : |
| KATHLEEN SEBELIUS, et al., | : |
| | : |
| Defendants. | : |

**ORDER APPROVING SETTLEMENT AGREEMENT BETWEEN PLAINTIFFS AND DEPARTMENT OF PUBLIC WELFARE DEFENDANTS, CERTIFYING THE PLAINTIFF CLASS AND APPOINTING CLASS COUNSEL**

**AND NOW**, this _____ day of _____, 2010, pursuant to Rules 23 (c),(e) and (g) of the Federal Rules of Civil Procedure, after consideration of the proposed Settlement Agreement Between Plaintiffs and Department of Public Welfare Defendants, IT IS ORDERED as follows:

1. The above matter may proceed as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(2). The class shall consist of all persons living in Pennsylvania who are, were or will be eligible for Medicare benefits, and who are, were or will be simultaneously also eligible to have their Medicare premiums paid for by the Pennsylvania Medicaid program's Medicare Savings Program, but whose Medicare Savings Program benefits are, were or will be denied or delayed as a result of defendants' failure to properly and efficiently administer the Medicare Savings Program part of the Medicaid program;

2. Plaintiffs' existing counsel, Community Legal Services and the Center for Medicare Advocacy, are appointed to serve as counsel for the class;

3. The Settlement Agreement is approved pursuant to Federal Rule of Civil Procedure 23(e). The Court's review of the Settlement Agreement was conducted solely to comply with Federal Rule of Civil Procedure 23(e) and does not convert the Settlement Agreement into an order of the Court or a consent decree;

4. Pursuant to the Settlement Agreement, plaintiffs' claims against the DPW defendants are hereby dismissed.

_____
SANCHEZ, J.